# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

DEBBIE CHAMBERS and CONNIE
LACEY, individually and on behalf of all
others similarly situated,

<em>Plaintiffs</em>,

vs.

GLENMARK PHARMACEUTICALS INC.,

<em>Defendant</em>.

**Civil Action _____**

**JURY TRIAL DEMANDED**

## CLASS ACTION COMPLAINT

Plaintiffs Debbie Chambers and Connie Lacey ("Plaintiffs") bring this Class Action Complaint against Defendant, Glenmark Pharmaceuticals Inc., ("Defendant" or "Glenmark") individually and on behalf of all others similarly situated, and allege, upon knowledge as to Plaintiffs' own actions and to counsels' investigation, review of public documents and upon information and belief as to all other matters, as follows:

## NATURE OF THE ACTION

1.      This is a class action lawsuit by Plaintiffs individually and on behalf of all others similarly situated who purchased Defendant's four different types of cholesterol medications: Fenofibrate capsules (Lipofen generic), Pravastatin sodium tablets (Pravachol generic), Rosuvastatin tablets (Crestor or Ezallor generic) and Colesvelam hydrocholoride tablets (WelChol generic), ("Medicines" or "Drugs")[1], that were manufactured, marketed, labeled, distributed, and sold by Defendant. The above- described group of persons who purchased Defendant's Drugs are to be referred to as the Putative Class hereinafter.

---

[1] https://www.thehealthy.com/news/cholesterol-medications-recalled-nationwide-april-2025/ (last accessed on April 17, 2025)

1

2.      These drugs are designed to lower Cholesterol levels.[2] Unfortunately, the FDA has determined that these medicines have CGMP Deviations.[3]

3.      CGMP refers to Current Manufacturing Practice regulation enforced by the FDA and provides for systems that assure proper design, monitoring, and control of manufacturing processes and facilities. [4]

4.      Adherence to the CGMP regulations assures the identity, strength, quality, and purity of drug products by requiring that manufactures of medications adequately control manufacturing operations. This includes establishing strong quality management systems, obtaining appropriate quality deviations, and maintaining reliable testing laboratories. [5]

5.      The FDA has labeled the Glenmark Pharmaceuticals event as a Class II recall, meaning ingesting the pills has the potential to cause temporary adverse medical effects. These drugs are part of a large-scale recall of 39 different medications from the pharmaceutical company, whose other affected products including heart medications and pain relievers.[6]

6.      Plaintiffs bring this action because of the Defendant's fraud, false marketing, false advertising, breach of contract, breach of warranty, and breaches of state law consumer protection statutes.

7.      Through its own marketing, Defendant is seeking out consumers who are in vulnerable positions given their need for medications related to blood pressure issues.

---

[2] *Id.*
[3] https://www.accessdata.fda.gov/scripts/ires/?Event=96474 (last accessed on April 17, 2025)
[4] https://www.fda.gov/drugs/pharmaceutical-quality-resources/facts-about-current-good-manufacturing-practice-cgmp (last accessed on April 17, 2025)
[5] *Id.*
[6] https://www.thehealthy.com/news/cholesterol-medications-recalled-nationwide-april-2025/ (last accessed on April 17, 2025)

## JURISDICTION AND VENUE

8.      This Court has subject-matter jurisdiction to adjudicate the claims set forth herein under the provisions of the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d), because (1) the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs, (2) the action is a class action, (3) there are members of the Class who are diverse from Defendant, and (4) there are more than 100 class members.

9.      This Court has personal jurisdiction over the Defendant because the Defendant's principal place of business is located within this judicial district or are registered to do business within this district.

10.     Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391 because Defendant is headquartered in this district, transacts business in this district, is subject to personal jurisdiction in this district, and therefore is deemed to be a citizen of this district.

11.     Given that Defendant's headquarters are located within this district, the design, approval, and distribution process of the Drugs occurred or originated within this District.

12.     Additionally, Defendant has advertised in this district and has received substantial revenue and profits from its sales of Drugs in this district; therefore, a substantial part of the events and/or omissions giving rise to the claims occurred, in part, within this district.

## PARTIES

13.     Plaintiff Debbie Chambers is a resident of Albany, Georgia. Albany is located within Dougherty County, GA.

14.     Plaintiff Connie Lacey is a resident of Canton, Ohio. Canton is located within Stark County, OH.

15.     Plaintiff Debbie Chambers purchased Defendant's Pravastatin 80mg.

16.     Plaintiff Connie Lacey purchased Pravastatin Sodium 20 mg.

17.     Unfortunately, Plaintiffs suffered from high blood pressure and purchased the drugs mentioned above to lower their cholesterol.

18.     Plaintiffs, along with many others, have spent countless dollars on these Drugs while expecting to be relieved of high blood pressure but to no avail.

19.     Defendant is a New Jersey based corporation, with its principal place of business at: 750 Corporate Drive Mahwah, NJ 07430.

20.     Defendant has repeatedly touted the quality of the Drugs they manufacture. [7]

## FACTUAL ALLEGATIONS

21.     Plaintiffs purchased Defendant's Drugs from their local pharmacy stores.

22.     Specifically, Plaintiffs purchased Pravastatin 80mg and Pravastatin Sodium 20 mg.

23.     Plaintiffs are left with remaining medication that is now unusable.

24.     In more detail, the recalled products are the following[8]:

**Fenofibrate, 67 mg—manufactured for Glenmark Pharmaceuticals Inc.**

•       Amount per bottle: 100 capsules

•       National Drug Code (NDC): 68462-580-01

•       Lot number: 17230834 or 17230835

•       Expiration date: March-2025

**Pravastatin sodium, 20 mg—manufactured for Glenmark Pharmaceuticals Inc.**

•       Amount per bottle: 90 or 500 tablets

•       NDC: 68462-196-90 or 68462-196-05

•       Lot number: 17230810, 17230811, 17230810, 17232501, or 17232502

---

[7] https://glenmarkpharma-us.com/over-the-counter-otc/ (last accessed on April 17, 2025).
[8] https://www.thehealthy.com/news/cholesterol-medications-recalled-nationwide-april-2025/ (last accessed on April 17, 2025).

• Expiration date: March-2026 or November-2026

**Pravastatin sodium, 80 mg—manufactured for Glenmark Pharmaceuticals Inc.**

• Amount per bottle: 90 tablets

• NDC: 68462-198-90

• Lot number: 17221771, 17230930, 17230931, 17231252, 17231274, 17231855, 17231916,

17231917, or 17231945

• Expiration date: August-2025, April-2026, May-2026, or August-2026

**Rosuvastatin, 40 mg—manufactured for Glenmark Pharmaceuticals Inc.**

• Amount per bottle: 30

• NDA: 68462-264-30

• Lot number: 17240389, 17240390, 17240426, 17240427, 17240428, 17240778, 17241055,

17241074, 17241075, 17241091, or 17241100

• Expiration date: February-2026, April-2026, May-2026, May-2026, or June-2026

**Colesvelam hydrocholoride, 625 mg—manufactured for Glenmark Pharmaceuticals Inc.**

• Amount per bottle: 180 tablets

• NDC: 68462-433-18

• Lot number: 17240669, 17240876, 17240883, 17240909, 17240914, or 17240927

• Expiration date: March-2026, April-2026, or May-2026

25. The reason for the recall is listed as "CGMP Deviations."

26.    The FDA conducts investigations at pharmaceutical manufacturing plants to determine if the medication it produces is effective and safe for the public.[9]

---

[9] https://www.thehealthy.com/news/cholesterol-medications-recalled-nationwide-april-2025/ (last accessed on April 17, 2025).

27.     CGMP deviations aren't always tied to the product itself—it could be the result of inappropriately obtained materials, substandard manufacturing operations, or poorly built systems designed to oversee potential product deviations, as examples.[10]

28.     The FDA has labeled the Glenmark Pharmaceuticals event as a Class II recall[11], meaning ingesting the pills has the potential to cause temporary adverse medical effects.[12]

## CLASS ACTION ALLEGATIONS

29.     Plaintiffs bring this action on behalf of themselves and as a class action, pursuant to Fed. R. Civ. P. 23(a), 23(b)(2), and/or 23(b)(3). Specifically, the class and subclass are defined as follows:

> **Nationwide Class:** All persons within the United States who purchased the recalled Products:  Fenofibrate, 67 mg: Amount per bottle: 100 capsules, National Drug Code (NDC): 68462-580-01, Lot number: 17230834 or 17230835 and Expiration date: March-2025; Pravastatin sodium, 20 mg: Amount per bottle: 90 or 500 tablets, NDC: 68462-196-90 or 68462-196-05, Lot numbers: 17230810, 17230811, 17230810, 17232501, or 17232502 and Expiration date: March-2026 or November-2026; Pravastatin sodium, 80 mg: Amount per bottle: 90 tablets, NDC: 68462-198-90, Lot numbers: 17221771, 17230930, 17230931, 17231252, 17231274, 17231915, 17231916, 17231917, or 17231945 and Expiration date: August-2025, April-2026, May-2026, or August-2026; Rosuvastatin, 40 mg: Amount per bottle: 30, NDA: 68462-264-30, Lot numbers: 17240389, 17240390, 17240426, 17240427, 17240428, 17240778, 17241055, 17241074, 17241075, 17241091, or 17241100, Expiration date: February-2026, April-2026, May-2026, May-2026, or June-2026; and Colesvelam Hydrocholoride, 625 mg: Amount per bottle: 180 tablets, NDC: 68462-433-18, Lot numbers: 17240669, 17240876, 17240883, 17240909, 17240914, or 17240927 and Expiration date: March-2026, April-2026, or May-2026.

> **Georgia Subclass:** All persons within the State of Georgia States who purchased the recalled Products:  Fenofibrate, 67 mg: Amount per bottle: 100 capsules, National Drug Code (NDC): 68462-580-01, Lot number: 17230834 or 17230835 and Expiration date: March-2025; Pravastatin sodium, 20 mg: Amount per bottle: 90 or 500 tablets, NDC: 68462-196-90 or 68462-196-05, Lot numbers: 17230810,

---

[10] *Id.*

[11] https://www.accessdata.fda.gov/scripts/ires/?Event=96474 (last accessed on April 17, 2025)

[12] https://www.thehealthy.com/news/cholesterol-medications-recalled-nationwide-april-2025/ (last accessed on April 17, 2025).

17230811, 17230810, 17232501, or 17232502 and Expiration date: March-2026 or November-2026; Pravastatin sodium, 80 mg: Amount per bottle: 90 tablets, NDC: 68462-198-90, Lot numbers: 17221771, 17230930, 17230931, 17231252, 17231274, 17231855, 17231916, 17231917, or 17231945 and Expiration date: August-2025, April-2026, May-2026, or August-2026; Rosuvastatin, 40 mg: Amount per bottle: 30, NDA: 68462-264-30, Lot numbers: 17240389, 17240390, 17240426, 17240427, 17240428, 17240778, 17241055, 17241074, 17241075, 17241091, or 17241100, Expiration date: February-2026, April-2026, May-2026, May-2026, or June-2026; and Colesvelam Hydrocholoride, 625 mg: Amount per bottle: 180 tablets, NDC: 68462-433-18, Lot numbers: 17240669, 17240876, 17240883, 17240909, 17240914, or 17240927 and Expiration date: March-2026, April-2026, or May-2026.

**Ohio Subclass:** All persons within the State of Ohio States who purchased the recalled Products: Fenofibrate, 67 mg: Amount per bottle: 100 capsules, National Drug Code (NDC): 68462-580-01, Lot number: 17230834 or 17230835 and Expiration date: March-2025; Pravastatin sodium, 20 mg: Amount per bottle: 90 or 500 tablets, NDC: 68462-196-90 or 68462-196-05, Lot numbers: 17230810, 17230811, 17230810, 17232501, or 17232502 and Expiration date: March-2026 or November-2026; Pravastatin sodium, 80 mg: Amount per bottle: 90 tablets, NDC: 68462-198-90, Lot numbers: 17221771, 17230930, 17230931, 17231252, 17231274, 17231855, 17231916, 17231917, or 17231945 and Expiration date: August-2025, April-2026, May-2026, or August-2026; Rosuvastatin, 40 mg: Amount per bottle: 30, NDA: 68462-264-30, Lot numbers: 17240389, 17240390, 17240426, 17240427, 17240428, 17240778, 17241055, 17241074, 17241075, 17241091, or 17241100, Expiration date: February-2026, April-2026, May-2026, May-2026, or June-2026; and Colesvelam Hydrocholoride, 625 mg: Amount per bottle: 180 tablets, NDC: 68462-433-18, Lot numbers: 17240669, 17240876, 17240883, 17240909, 17240914, or 17240927 and Expiration date: March-2026, April-2026, or May-2026.

30.     Together, the Nationwide Class, Georgia Subclass and Ohio Subclass will be collectively referred to as the "Class" or "Classes". Members of these Classes will be referred to as "Class Members".

31.     Plaintiffs qualify as members of each of the proposed classes in the preceding paragraphs.

32.     Excluded from the Classes are the following individuals and/or entities: Defendant and Defendant's parents, subsidiaries, affiliates, officers and directors, and any entity in which Defendant has a controlling interest; all individuals who make a timely election to be excluded

from this proceeding using the correct protocol for opting out; and all judges assigned to hear any aspect of this litigation, as well as their immediate family.

33.     The proposed class definitions may be amended or modified from time to time.

34.     The particular members of the (i) Nationwide Class, (ii) Georgia Subclass, and (iii) Ohio Subclass are capable of being described without difficult managerial or administrative problems. The members of the putative classes are also readily identifiable from the information and records in the possession or control of Defendant or its affiliates and agents and from public records.

35.     Certification of Plaintiffs' claims for class-wide treatment is appropriate because Plaintiffs can prove the elements of their claims on a class-wide basis using the same evidence as would be used to prove those elements in individual actions alleging the same claims.

36.     The Proposed Classes are so numerous that the joinder of all members is impracticable.

37.     This action has been brought and may be properly maintained on behalf of the classes proposed herein under Federal Rule of Civil Procedure 23.

**Numerosity: Fed. R. Civ. P. 23(a)(1)**

38.     Upon information and belief, the Class is so numerous that the joinder of all members is impracticable. While the exact number and identities of individual members of the Class are unknown at this time, such information is in the sole possession of Defendant and obtainable by Plaintiffs only through the discovery process. Members of the Class may be notified of the pendency of this action by recognized, Court-approved notice dissemination methods, which may include U.S. Mail, Electronic Mail, internet postings, social media, and/or published notice.

**Superiority: Fed. R. Civ. P. 23(b)(3)**

39.     A class action is the appropriate method for the fair and efficient adjudication of this controversy. The presentation of separate incompatible standards of conduct for Defendant, and/or substantially impair or impede the ability of Class members to protect their interests. In addition, it would be impracticable and undesirable for each member of the Classes who suffered an economic loss to bring a separate action. The maintenance of separate actions would place a substantial and unnecessary burden on the courts and could result in inconsistent adjudications, while a single class action can determine, with judicial economy, the rights of all Class members

**Typicality: Fed. R. Civ. P. 23(a)(3)**

40.     Plaintiffs' claims are typical of those of the Class in that the Class members uniformly purchased Defendant's Products and were subjected to Defendant's uniform merchandising materials and representations at the time of purchase.

**Adequacy: Fed. R. Civ. P. 23(a)(4)**

41.     Plaintiffs are adequate class representatives because their interests do not conflict with the interests of the Class that they seek to represent. Plaintiffs have retained counsel competent and highly experienced in complex and class action litigation, and they intend to prosecute this action vigorously. The interests of the Class will be fairly and adequately protected by Plaintiffs and counsel.

**Existence and Predominance of Common Questions of Law and Fact Fed. R. Civ. P. 23(a)(2) and 23(b)(3)**

42.     There are questions of fact and law common to the Classes that predominate over any question affecting only individual members. Those questions, each of which may also be certified under Rule 23(c)(4), include without limitation.

a.  Whether Defendant negligently failed to exercise reasonable care in the formulation, design, manufacturing, promotion, marketing, advertising, packaging, labeling, distribution, and/or sale of the Products;

b.  Whether Defendant sold the defective Products, that were unreasonably dangerous to consumers such as Plaintiffs and members of the Class;

c.  Whether Defendant failed to adequately warn Plaintiffs and the Class of the dangers with respect to the defective Products;

d.  Whether Defendant was negligent for failure to warn;

e.  Whether Plaintiffs and the Class suffered Damages as a result of the defective Products;

f.  Whether Defendant was negligent for failure to test;

g.  Whether Defendant's advertising, merchandising, and promotional materials directed to Plaintiffs were deceptive regarding the risks posed by Defendant's Products;

h.  Whether Defendant made representations regarding the safety of the Products;

i.  Whether Defendant omitted material information regarding the safety of the Products;

j.  Whether Defendant's Products were merchantable;

k.  Whether Defendant violated the consumer protection statutes invoked herein;

l.  Whether Defendant's conduct alleged herein was fraudulent; and

m.  Whether Defendant was unjustly enriched by sales of the Products.

43.    The questions set forth above predominate over any questions affecting only individual persons concerning sales of Defendant's Products throughout the United States and a class action is superior with respect to considerations of consistency, economy, efficiency, fairness, and equity to the other available methods for the fair and efficient adjudication of Plaintiffs' claims.

**Insufficiency of Separate Actions: Fed. R. Civ. P. 23(b)(2)**

44.     Absent a representative class action, members of the Class would continue to suffer the harm described herein, for which they would have no remedy. Even if separate actions could be brought by individual consumers, the resulting multiplicity of lawsuits would cause undue burden and expense for both the Court and the litigants, as well as create a risk of inconsistent rulings and adjudications that might be dispositive of the interests of similarly situated purchasers, substantially impeding their ability to protect their interests, while establishing incompatible standards of conduct for Defendant. The proposed Class thus satisfy the requirements of Fed. R. Civ. P. 23(b)(1). Counsel is experienced in the litigation of civil matters, including the prosecution of consumer protection class action cases.

**Declaratory and Injunctive Relief**

45.     Defendant has acted or refused to act on grounds generally applicable to Plaintiffs and the other Class Members as described below, with respect to the members of the Class as a whole. Plaintiffs seek to certify Class to enjoin Defendant from selling or otherwise distributing the Products as labeled until such time that Defendant can demonstrate to the Court's satisfaction that the Products confer the advertised benefits and are otherwise safe to use as intended

<u>**CAUSES OF ACTION**</u>

<u>**COUNT I**</u>
**Violation of the New Jersey Consumer Fraud Act (N.J.S.A. 56:8-1 et seq)**
**(On Behalf of Plaintiffs and Subclasses)**

46.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

47.     Plaintiffs bring this count on behalf of themselves and the Classes.

48.     At all times relevant, Defendant Glenmark Pharmaceuticals Inc. was engaged in the business of manufacturing, distributing, marketing, and selling pharmaceutical products, including the cholesterol – lowering medications subject to this action.

49.     Defendant, directly or indirectly, advertised, offered for sale, and sold said medications to Plaintiffs and the consuming public in the States of New Jersey and throughout the United States, including Georgia and Ohio.

50.     Defendant made representations that the recalled medications were safe, effective, and manufactured in compliance with applicable laws and standards.

51.     In fact, these representations were false, misleading, and omitted material facts in that the medications were not manufactured in compliance with Current Good Manufacturing Practices ("CGMP") and were ultimately subject to a Class II Nationwide recall by the FDA due to CGMP deviations.

52.     Defendant knew or should have known of the CGMP violations before or during distribution, yet failed to disclose these defects to consumers and continued to market the drugs as safe and effective Glenmark's acts and omissions constitute unlawful practices in violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 et seq., including but not limited to:

a)  Knowingly making false and misleading representations concerning the quality and safety of its medications;

b)  Concealing and failing to disclose material facts about known defects and manufacturing deficiencies;

c)   Engaging in unconscionable commercial practices and deception.

53.     As a direct and proximate result of these unlawful practices, Plaintiffs have suffered ascertainable losses, including but not limited to:

a) Purchase costs for unsafe and defective medications;

b) Costs associated with replacement medication and medical consultations;

c) Anxiety and emotional distress related to the potential health consequences of ingesting the recalled products.

54.     Plaintiffs seek all available remedies under the New Jersey Consumer Fraud Act, including but not limited to compensatory damages, attorneys' fees and costs of suit.

## COUNT II

### Negligence
### (On behalf Plaintiffs and the Classes)

55.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

56.     Plaintiffs bring this count on behalf of themselves and the Classes.

57.     Defendant has a duty to provide operable Drugs to consumers.

58.     Defendant breached this duty by designing, producing, marketing, and selling inoperable Drugs that didn't comply with CGMP Regulations.

59.     Defendant's breach of this duty to provide operable Drugs caused damages to Plaintiffs.

60.     Plaintiffs were damaged in that they lost the benefit of the bargain and have suffered economic loss through the retention of funds paid for the medicines.

61.     Defendant's actions caused these damages both factually and proximately.

62.     But for Defendant's design, production, marketing, and sale of inoperable Drugs, Plaintiffs and the Class would not have been damaged.

63.     Due to Defendant's conduct, Plaintiffs were damaged by Defendant in that Plaintiffs were deprived the benefit of the bargain and loss of purchase price

64.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's negligent failure to deliver the bargained for Drugs.

### COUNT III
### Negligent Misrepresentation
### (On behalf of Plaintiffs and the Classes)

65.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

66.    Plaintiffs brings this count on behalf of themselves and the Classes.

67.    Plaintiffs, and each member of the Classes, formed a contract with Defendant at the time they purchased the Products.

68.    Through their advertising and the course of their regular business, Defendant made representations to Plaintiffs and the Class concerning the function, operability, and validity of the Drugs.

69.    Defendant did not practice reasonable care in the above-mentioned design, creation, production, sale, and marketing of the Drugs.

70.    Defendant made these statements as to guide consumers, such as Plaintiffs and the Class, in the transactional process.

71.    Defendant knew that such statements would be relied upon, the fact that Defendant's Drugs were operable, by Plaintiffs and the Class, given that the statements were the entire reasoning for the purchase of the Drugs.

72.    Plaintiffs and the Class would not have purchased the Drugs without such statements and assertations put forth by Defendant.

73.    Defendant intended that Plaintiffs, and the Class rely on the representations made by Defendant regarding the Drugs.

74.    Plaintiffs reasonably relied upon such representations and omissions to their detriment as they suffered damages.

75.    By reason thereof, Plaintiffs and Class Members have suffered damages in an amount to be proven at trial.

76.    Due to Defendant's conduct, Plaintiffs were damaged by Defendant in that Plaintiffs have been deprived the benefit of the bargain and loss of purchase price.

77.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's negligent misrepresentation of the Drugs.

## COUNT IV

### Unjust Enrichment
### (On behalf of Plaintiffs and the Classes)

78.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

79.    Plaintiffs and the Class bestowed benefits upon Defendant in the form of monies that were paid in exchange for Defendant's Drugs

80.    These benefits bestowed by Plaintiffs were not a donation to Defendant as these monies were given for the purchase of the Drugs.

81.    As a result of Defendant's wrongful and deceptive conduct alleged herein, Defendant knowingly and voluntarily accepted and retained wrongful benefits in the form of money paid by the Plaintiffs and members of the Class when they purchased the Drugs.

82.    In so doing, Defendant acted with conscious disregard for the rights of Plaintiffs and members of the Class.

83.    Plaintiffs and the Class paid for Medicines that were properly functioning, Medicines whose sole function was lowering blood pressure. Instead, they received something entirely different and relatively unusable.

84.     As a result of Defendant's wrongful conduct as alleged herein, Defendant has been unjustly enriched at the expense of, and to the detriment of, Plaintiffs and members of the Class.

85.     Defendant's unjust enrichment is traceable to, and resulted directly and proximately from, the conduct alleged herein.

86.     Under the common law doctrine of unjust enrichment, it is inequitable for Defendant to be permitted to retain the benefits it received, and is still receiving, without justification, from the false and deceptive manufacturing, labeling, and marketing of the Drugs to Plaintiffs and members of the Class.

87.     Defendant's retention of such funds under circumstances making it inequitable to do so, constitutes unjust enrichment.

88.     The financial benefits derived by Defendant rightfully belong to Plaintiffs and members of the Class.

89.     Given the above, the circumstances make Defendant's retention of funds inequitable, without reimbursement for the funds to Plaintiffs and the Class.

90.     Defendant should be compelled to disgorge in a common fund for the benefit of Plaintiffs and members of the Class all wrongful or inequitable proceeds received by them, plus interest thereon.

91.     Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

<u>**COUNT V**</u>
**Breach of Implied Warranty of Merchantability Warranty**
**(On behalf of Plaintiffs and the Classes)**

92.     Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

93.    As detailed above, Defendant, through its advertising and marketing expressly warranted that the Drugs were for the purposes intended, that they were of merchantable quality, and that they actually provided sinus/nasal condition relief.

94.    Moreover, the description for the Drugs represents the use of these Drugs serve to be a quality product that reduces blood pressure. Such statements constitute an affirmative promise that these Drugs will indeed provide a reduction of blood pressure.

95.    Defendant breached this express warranty by providing Drugs that were inoperable.

96.    Plaintiffs and the other Class Members read and relied on these express warranties provided by Defendant in the description of the product and subsequent advertisements.

97.    Defendant breached their express warranties because the Drugs at issue are defective and unfit for their intended use.

98.    Defendant's breach of warranty proximately caused damages as it is foreseeable that such defective Drugs, incapable of delivering on their warranties, would deprive Plaintiffs of their benefit of the bargain and monies paid for such Drugs.

99.    Plaintiffs and the other Class Members have suffered harm on account of Defendant's breach of its express warranty regarding the fitness for use of the Drugs and are entitled to damages to be determined at trial.

100.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief thereunder for Defendant's failure to deliver Drugs conforming to their express warranties and resulting breach.

## COUNT V
### Breach of Implied Warranty of Merchantability
### (On behalf of Plaintiffs and the Classes)

101.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

17

102.    Defendant sold the Drugs to Plaintiffs and other consumers.

103.    Plaintiffs are persons who reasonably expected to use such Drugs, given that the Drugs were sold to the public and Plaintiffs as consumers.

104.    Defendant is a medical corporation providing medicines to consumers worldwide.

105.    Defendant presented the Drugs as operable/effective drugs that lowered blood pressure for Plaintiffs and other consumers.

106.    The Drugs were not merchantable at the time of sale given that they did not comply with CGMP Regulations, as marketed and promised by Defendant.

107.    This lack of merchantability is a breach of warranty.

108.    This breach both factually and proximately caused damages to Plaintiffs through loss of funds and the deprivation of the benefit of the bargain.

109.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available thereunder for Defendant's failure to deliver goods conforming to their implied warranties and resulting in breach.

## COUNT VI
### Breach of Contract
### (On behalf of Plaintiffs and the Classes)

110.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

111.    Plaintiffs bring this Count individually and on behalf of the Classes.

112.    Through their marketing, advertisements, and promises, Defendant created a contract with Plaintiffs.

113.    In specific, Plaintiffs were to receive medicine of great quality that would lower their blood pressure in exchange for the purchase price of Defendant's Drugs.

114.    Plaintiffs performed their obligation under the contract through their paid purchase price of the Drugs.

115.    Defendant failed to perform their obligation under the contract in that Defendant failed to provide medicine of great quality that would lower their blood pressure as included in the Drugs.

116.    Plaintiffs and the Class have been damaged as a direct and proximate result of Defendant's breach.

117.    Plaintiffs and the Class seek actual damages, attorneys' fees, costs and any other just and proper relief available under the laws.

<u>COUNT VII</u>
**Strict Liability- Design and Formulation Defect**
**(On behalf of Plaintiffs and the Classes)**

118.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

119.    The design and formulation of the Drugs was defective and unreasonably dangerous.

120.    The risk of consuming medicines that are not up to date with the FDA standards creates unreasonable danger.

121.    The design and formulation of the Drugs rendered it not reasonably fit, suitable, or safe for their intended purpose.

122.    The risk of consuming medicines that are not up to date with the FDA standards outweighed the benefits and renders the Drugs unreasonably dangerous.

123.    Defendant's Products were defective because the design and formulation of the Products included a defect by marketing and selling medicines that are not up to date with the FDA standards. After Defendant knew or should have known of the risk of selling medicines that are

not up to date with the FDA standards, Defendant continued to promote the Products as safe and effective to the Plaintiffs, Class Members, and public.

124.    There are other Blood Pressure pills that do not pose the risk of not complying with CGMP standards meaning that there were other means of production available to Defendant.

125.    The Drugs are unreasonably unsafe, and they should not have been sold in the market.

126.    The Drugs did not perform as an ordinary consumer would expect.

127.    The Defendant's design/formulation of the Drugs is the proximate cause of damages to the Plaintiffs and the Class Members.

128.    Plaintiffs and Class Members have suffered damages in an amount to be determined at trial and are entitled to any incidental, consequential, and other damages and other legal and equitable relief, as well as cost and attorneys' fees, available under law.

## COUNT VIII
### Medical Monitoring
### (On behalf of Plaintiffs and the Classes)

129.    Plaintiffs incorporate the foregoing allegations as if fully set forth herein.

130.    Plaintiffs ingested medications manufactured by Defendant that were subject to a nationwide Class II FDA recall, based on CGMP deviations that could result in unsafe or ineffective drug products.

131.    As a direct result of Defendant's conduct, Plaintiffs were exposed to defective and potentially harmful pharmaceutical products that placed them at an increased risk of adverse health effects.

132.    Plaintiffs allege that ingestion of the recalled medications justifies medical monitoring under New Jersey law because:

    a. Plaintiffs were significantly exposed to a proven hazardous substance;

    b. As a result of that exposure, Plaintiffs suffer a significantly increased risk of contracting serious latent diseases or conditions;

    c. The increased risk makes periodic diagnostic medical examinations reasonably necessary; and

    d. Monitoring procedures exist which make the early detection and treatment of these diseases possible and beneficial.

133. Medical monitoring is a necessary and appropriate remedy to facilitate early detection and treatment of any conditions that may arise due to the ingestion of contaminated or improperly manufactured medications.

134. Plaintiffs seek the establishment of a court-supervised medical monitoring program, including: 1) Periodic medical examination and testing; 2) Access to appropriate medical professionals; and 3) A fund to cover costs associated with monitoring and early treatment.

## **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiffs, individually and on behalf of the other members of the Classes, alleged herein, respectfully requests that the Court enter judgment in their favor and against Defendant as follows:

    A. Certifying the Classes as proposed herein, designating Plaintiffs as Class representatives, and appointing undersigned counsel as Class Counsel;

    B. For an order finding in favor of Plaintiffs and the Classes on all counts asserted herein;

    C. Declaring that Defendant is financially responsible for notifying the Proposed Classes Members of the pendency of this action;

D.  Award all actual, general, special, incidental, statutory, consequential and punitive damages to which Plaintiffs and Class Members are entitled;

E.  Scheduling a trial by jury in this action;

F.  Awarding pre and post-judgment interest on any amounts awarded, as permitted by law;

G.  For an order of restitution and all other forms of equitable monetary relief;

H.  For injunctive relief as pleaded or as the Court may deem proper;

I.  Award Costs including reasonable attorneys' fees, court costs, and other litigation expenses; and

J.  Any other relief the Court may deem just and proper.

## DEMAND FOR JURY TRIAL

Plaintiffs, individually and on behalf of all those similarly situated, hereby requests a jury trial, pursuant to Federal Rule of Civil Procedure 38, on any and all claims so triable.

Dated: April 22, 2025

By: /s/ Philip J. Furia
Philip Furia, Esq.
Jason P. Sultzer, Esq.
**SULTZER & LIPARI, PLLC**
85 Civic Center Plaza, Suite 200
Poughkeepsie, New York 12601
Tel: (845) 483-7100
furiap@thesultzerlawgroup.com
sultzerj@thesultzerlawgroup.com

-AND-

Paul J. Doolittle, Esq. (Pro Hac Vice Forthcoming)
**POULIN | WILLEY | ANASTOPOULO, LLC**
32 Ann Street
Charleston, SC 29403
Tel: (803) 222-2222

Email: paul.doolittle@poulinwilley.com
cmad@poulinwilley.com

*Attorneys for Plaintiffs*