<u>NOT FOR PUBLICATION</u>

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

|  |  |
|---|---|
| DEBBIE CHAMBERS AND CONNIE LACEY, *individually and on behalf of all others similarly situated*,<br><br>   *Plaintiffs*,<br><br>v.<br><br>GLENMARK PHARMACEUTICALS INC.,<br><br>   *Defendant*. | Civil Action No. 25-2984<br><br>**OPINION**<br><br>June 17, 2026 |

**SEMPER**, District Judge.

  **THIS MATTER** comes before the Court upon Defendant Glenmark Pharmaceuticals Inc.'s ("Glenmark" or "Defendant") Motion to Dismiss Plaintiffs Debbie Chambers ("Chambers") and Connie Lacey's ("Lacey" and together with Chambers, "Plaintiffs") Complaint (ECF 1, "Compl.") pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6). (ECF 7, "Motion" or "Mot.") Plaintiffs opposed the Motion. (ECF 13, "Opp.") Defendant filed a reply. (ECF 22, "Reply.") The Court considered Plaintiffs' Complaint and the parties' submissions, and the Motion was decided without oral argument pursuant to Federal Rule of Civil Procedure 78 and Local Civil Rule 78.1. For the reasons set forth below, Defendant's Motion is **GRANTED**.

  **I.**  **FACTUAL BACKGROUND AND PROCEDURAL HISTORY[1]**

---

[1] The Court draws the facts and procedural background from the Complaint. The Court also considers any "document integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997). The allegations in the Complaint are accepted as true solely for purposes of this Motion, except where conclusory and/or implausible. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).

This matter arises from the purchase of four different cholesterol medications: Fenofibrate capsules (Lipofen generic), Pravastatin sodium tablets (Pravachol generic), Rosuvastatin tablets (Crestor or Ezallor generic), and Colesvelam hydrocholoride tablets (WelChol generic), (collectively, "the drugs").  (Compl. ¶ 1.)  Plaintiff Chambers is a resident of Albany, GA, and purchased Pravastatin 80 mg for the purpose of lowering her cholesterol.  (*Id.* ¶¶ 13, 15, 17.)  Plaintiff Lacey is a resident of Canton, Ohio and purchased Pravastatin Sodium 20 mg for the purpose of lowering her cholesterol.  (*Id.* ¶¶ 14, 16-17.)  Defendant is a pharmaceutical company, with its principal place of business in New Jersey, that manufactured, marketed, labeled, distributed, and sold the four cholesterol drugs throughout the United States.  (*See id.* ¶¶ 1, 19.)

Plaintiffs are suing Defendant on behalf of themselves and others similarly situated as a purported class action pursuant to Federal Rule of Civil Procedure 23.  (*Id.* ¶¶ 29-44.)  Plaintiffs put forth a nationwide class, Georgia subclass, and Ohio subclass.  (*Id.*)  Plaintiffs allege that Defendant initiated a recall of the drugs after the FDA notified it of noncompliance with "Current Good Manufacturing Practice" or "CGMP" regulations in March 2025.  (*See id.* ¶¶ 2-5.)  The FDA promulgated CGMP regulations as follows:

(a) The regulations set forth in this part and in parts 211, 213, 225, and 226 of this chapter contain the minimum current good manufacturing practice for methods to be used in, and the facilities or controls to be used for, the manufacture, processing, packing, or holding of a drug to assure that such drug meets the requirements of the act as to safety, and has the identity and strength and meets the quality and purity characteristics that it purports or is represented to possess.

(b) The failure to comply with any regulation set forth in this part and in parts 211, 213, 225, and 226 of this chapter in the manufacture, processing, packing, or holding of a drug shall render such drug to be adulterated under section 501(a)(2)(B) of the act and such drug, as well as the person who is responsible for the failure to comply, shall be subject to regulatory action.

21 C.F.R. § 210.1 (2026).  Pharmaceutical companies may initiate a voluntary recall of a drug to address a violation of the FDA's regulations as an alternative to being subject to FDA-initiated

action. *Id.* § 7.40.  After a company initiates recall, the FDA evaluates the health hazard associated with the recall and classifies it accordingly.  *Id.* § 7.41.

(1) Class I is a situation in which there is a reasonable probability that the use of, or exposure to, a violative product will cause serious adverse health consequences or death.
(2) Class II is a situation in which use of, or exposure to, a violative product may cause temporary or medically reversible adverse health consequences or where the probability of serious adverse health consequences is remote.
(3) Class III is a situation in which use of, or exposure to, a violative product is not likely to cause adverse health consequences.

*Id.* § 7.3(m)(1)-(3).  Here, the FDA labeled Defendant's recall as a Class II, which means that "ingesting the pills has the potential to cause temporary adverse medical effects."  (Compl. ¶ 5.) In regard to Pravastatin, the only drug named Plaintiffs Chambers and Lacey allege purchase of, Defendant recalled (1) five lots of the 20 mg tablets with an expiration date of March 2026 or November 2026 and (2) nine lots of the 80 mg tablets with an expiration date of August 2025, April 2026, May 2026, or August 2026.  (*See id.* ¶ 24.)

Plaintiffs allege Defendant's design and formulation of the drugs are "not reasonably fit, suitable, or safe for their intended purpose" and therefore Defendant breached its reasonable care and contractual duties owed to Plaintiffs.  (*See id.* ¶¶ 57-58, 68-69, 119-25.)  Plaintiffs further allege Defendant made false and misleading representations that the drugs "were safe, effective, and manufactured in compliance with applicable laws and standards" where Defendant knew or should have known the drugs were subject to recall due to noncompliance with FDA regulations. (*Id.* ¶¶ 50-52.)  Plaintiffs also claim that Defendant wrongfully retained the money Plaintiffs paid when purchasing the drugs.  (*Id.* ¶¶ 79-81.)

On April 22, 2025, Plaintiffs initiated this action against Defendant, alleging a violation of the New Jersey Consumer Fraud Act, N.J.S.A. 56:8-1 *et seq.* (Count I), negligence (Count II), negligent misrepresentation (Count III), unjust enrichment (Count IV), breach of implied warranty

3

of merchantability (Count V), breach of contract (Count VI), strict liability for design and formulation defect (Count VII), and medical monitoring (Count VIII). (*Id.* ¶¶ 46-134.) On June 23, 2025, Defendant moved to dismiss Plaintiffs' Complaint. (Mot.) Plaintiffs filed an opposition on July 21, 2025. (Opp.) Defendant replied on August 11, 2025. ( Reply.)

## II.    LEGAL STANDARD

### A.  Rule 12(b)(1)

Federal Rule of Civil Procedure Rule 12(b)(1) permits courts to dismiss actions for lack of subject matter jurisdiction. Under Article III, federal courts have jurisdiction to hear "cases" and "controversies." *Lutter v. JNESO*, 86 F.4th 111, 123 (3d Cir. 2023). Thus, for a plaintiff to bring an action in federal court, they must have a "personal stake," in a "case" or "controversy." *Raines v. Byrd*, 521 U.S. 811, 819 (1997). This is known as Article III standing. "A motion to dismiss for want of standing is . . . properly brought pursuant to Rule 12(b)(1), because standing is a jurisdictional matter." *Ballentine v. United States*, 486 F.3d 806, 810 (3d Cir. 2007).

Rule 12(b)(1) motions may challenge subject matter jurisdiction based upon the face of the complaint or its underlying facts. *Common Cause of Pa. v. Pennsylvania*, 558 F.3d 249, 257 (3d Cir. 2009); *Pittman v. Metuchen Police Dept.*, No. 08-2373, 2009 WL 3207854, at *1 (D.N.J. Sept. 29, 2009). A facial attack questions the sufficiency of the pleading and requires the trial court to accept the allegations in the complaint as true. *Common Cause of Pa.*, 558 F.3d at 257; *Pittman*, 2009 WL 3207854, at *1. A factual attack, by contrast, calls upon the court to weigh the evidence. *Pittman*, 2009 WL 3207854, at *1. Here, Defendant presents a facial attack because it argues that even if all the facts pled in the Complaint are true, the Court lacks jurisdiction to hear Plaintiffs' claims. *See Common Cause of Pa.*, 558 F.3d at 257. Therefore, the Court will presume the truth of Plaintiffs' allegations under the Rule 12(b)(6) standard. *See Saint-Jean v. Ctny. of Bergen*, 509

4

F. Supp. 3d 87, 97 (D.N.J. 2020) ("[A] facial motion is handled much like a 12(b)(6) motion, and allegations in the complaint are accepted as true.").

### B. Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) permits a defendant to move to dismiss a count for "failure to state a claim upon which relief can be granted[.]"  To withstand a motion to dismiss under Rule 12(b)(6), a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007).  A complaint is plausible on its face when there is enough factual content "that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  Although the plausibility standard "does not impose a probability requirement, it does require a pleading to show more than a sheer possibility that a defendant has acted unlawfully." *Connelly v. Lane Const. Corp.*, 809 F.3d 780, 786 (3d Cir. 2016) (internal quotation marks and citations omitted).  As a result, a plaintiff must "allege sufficient facts to raise a reasonable expectation that discovery will uncover proof of [his] claims." *Id.* at 789.

In evaluating the sufficiency of a complaint, a district court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *Phillips v. Ctny. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008).  A court, however, may "disregard threadbare recitals of the elements of a cause of action, legal conclusions, and conclusory statements." *James v. City of Wilkes-Barre*, 700 F.3d 675, 681 (3d Cir. 2012) (citing *Iqbal*, 556 U.S. at 678-79).  "Once accepted as true and construed in the light most favorable to the plaintiff," the Court determines whether those factual allegations "plausibly give rise to an entitlement to relief."  *Connelly*, 809 F.3d at 787 (quoting *Iqbal*, 556 U.S. at 679).).

### C. Rule 9(b)

Federal Rule of Civil Procedure 9(b) imposes additional pleading requirements. "Independent of the standard applicable to Rule 12(b)(6) motions, Rule 9(b) imposes a heightened pleading requirement of factual particularity with respect to allegations of fraud." *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 311 F.3d 198, 216 (3d Cir. 2002). Thus, pursuant to Rule 9(b), when "alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake. Malice, intent, knowledge, and other conditions of a person's mind may be alleged generally." Fed. R. Civ. P. 9(b). A party alleging fraud must therefore support its allegations with factual details such as "the who, what, when, where and how of the events at issue." *U.S. ex rel. Moore & Co., P.A. v. Majestic Blue Fisheries, LLC*, 812 F.3d 294, 307 (3d Cir. 2016). Accordingly, "[t]o satisfy the particularity standard, 'the plaintiff must plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation.'" *Feingold v. Graff*, 516 F. App'x 223, 226 (3d Cir. 2013) (citing *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007)). This heightened standard is designed to "ensure that defendants are placed on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of fraud." *Craftmatic Sec. Litig. v. Kraftsow*, 890 F.2d 628, 645 (3d Cir. 1989) (internal quotation marks omitted).

## III.    ANALYSIS

### A.  Article III Standing

The Court first addresses Defendant's Rule 12(b)(1) challenge. *See Dickerson v. Bank of Am., N.A.*, No. 12-03922, 2013 WL 1163483, at *1 (D.N.J. Mar. 19, 2013) ("When a motion under Rule 12 is based on more than one ground, the court should consider the 12(b)(1) challenge first because if it must dismiss the complaint for lack of subject matter jurisdiction, all other defenses

and objections become moot.").  Defendant asserts several standing grounds as to why this Court lacks subject matter jurisdiction over this matter.  (*See* Mot. at 17-32.)

To establish Article III standing, a plaintiff must allege they suffered "(1) a concrete, particularized, and actual or imminent injury, (2) that was likely caused by the defendant, and (3) would likely be redressable by a favorable judicial decision." *Morales v. Commonwealth Fin. Sys., Inc.*, No. 22-3388, 2023 WL 8111458, at *2 (3d Cir. 2023) (citing *TransUnion LLC v. Ramirez*, 594 U.S. 413, 423 (2021)).  "If 'the plaintiff does not claim to have suffered an injury that the defendant caused and the court can remedy, there is no case or controversy for the federal court to resolve.'" *TransUnion LLC*, 594 U.S. at 423 (quoting *Casillas v. Madison Avenue Assocs., Inc.*, 926 F.3d 329, 333 (7th Cir. 2019)).  A plaintiff's injury must be concrete, meaning "real, and not abstract." *Spokeo, Inc. v. Robins*, 578 U. S. 330, 340 (2016).  However, a concrete injury may be either tangible, such as physical or monetary harm, or intangible, such as reputational harm. *TransUnion LLC*, 594 U.S. at 425.

### 1. Injury-in-Fact

Defendant argues Plaintiffs' alleged injuries are conjectural and hypothetical because they do not allege that they purchased or consumed Pravastatin from a recalled lot.  (Mot. at 26-28.) Plaintiffs argue they sufficiently allege economic loss and health-related injuries.  (Opp. at 15.) The Court finds that Plaintiffs fail to plausibly allege an injury-in-fact.

### a. Economic Injury

Plaintiffs allege that they suffered economic harm because they "are left with remaining medication that is now unusable," and therefore have lost the benefit of the bargain with Defendant (Compl. ¶¶ 21-23.)   Defendant argues that Plaintiffs generally allege they each purchased Pravastatin and that certain lots of Pravastatin were recalled—not that Plaintiffs purchased

7

Pravastatin that came from a recalled lot.  (Mot. at 27-28.)  In their Opposition, Plaintiffs argue

that they suffer "a concrete and particularized injury resulting from their purchase and use of

Defendant's recalled [Pravastatin]" and cite to the Complaint at paragraphs 15, 16, 17 and 28 to

support their argument.  (Opp. at 15.)  The Complaint reads, in relevant part:

> Paragraph 15: Plaintiff Debbie Chambers purchased Defendant's Pravastatin 80mg.
> Paragraph 16: Plaintiff Connie Lacey purchased Pravastatin Sodium 20 mg.
> Paragraph 17: Unfortunately, Plaintiffs suffered from high blood pressure and
> purchased the drugs mentioned above to lower their cholesterol.
> Paragraph 28: The FDA labeled the Glenmark Pharmaceuticals event as a Class II
> recall, meaning ingesting the pills has the potential to cause temporary adverse
> medical effects.

The Court finds that Plaintiffs do not allege or even argue that Chambers purchased Pravastatin 80

mg from one or more of Defendant's nine recalled lots or that Lacey purchased Pravastatin 20 mg

from one or more of Defendant's five recalled lots.

Economic harm "is a 'classic' and 'paradigmatic form' of injury in fact."  *Cottrell v. Alcon

Lab'ys*, 874 F.3d 154, 164 (3d Cir. 2017) (quoting *Danvers Motor Co. v. Ford Motor Co.*, 432 F.3d

286, 291, 293 (3d Cir. 2005)).  "Under the benefit of the bargain theory, a plaintiff might

successfully plead an economic injury by alleging that she bargained for a product worth a given

value but received a product worth less than that value."  *In re Johnson & Johnson Talcum Powder

Prods. Mktg., Sales Pracs. & Liab. Litig.*, 903 F.3d 278, 283 (3d Cir. 2018).  To survive a motion

to dismiss, a plaintiff must "plausibly allege that *their* products were [defective]."  *Huertas v. Bayer

US LLC*, 120 F.4th 1169, 1178 (3d Cir. 2024) (emphasis in original); *see also Grodnick v. Johnson

& Johnson*, No. 24-2616, 2024 WL 5056411, at *3 (D.N.J. Dec. 10, 2024) (finding no injury-in-

fact where "Plaintiff fail[ed] to allege that the specific [product] he purchased [was defective]").

"Otherwise, their claim that they purchased a product worth less than the product for which they

bargained necessarily fails, and they are not entitled to relief under the benefit-of-the-bargain

theory." *Huertas*, 120 F.4th at 1178. "The mere fact that a product was recalled [does] 'not nudge[] [Plaintiffs'] claims across the line from conceivable to plausible.'" *Id.* (quoting *Twombly*, 550 U.S. at 570).

Here, Plaintiffs plead conclusory assertions that their purchased Pravastatin is now worth less due to Defendant's recall while offering a dearth of allegations related to their individual purchases. To be clear, Plaintiffs provide no allegations that their individually purchased tablets were among those lot numbers Defendant recalled. (*See generally* Compl.) Plaintiffs' economic injury is therefore conjectural or hypothetical and Plaintiffs "are not entitled to relief under the benefit-of-the-bargain theory." *Huertas*, 120 F.4th at 1178. The fact that Plaintiffs suggest that the Pravastatin they purchased did not lower their high blood pressure, (Compl. ¶ 18), does not save their claim. Rather, Plaintiffs purchased Pravastatin to lower their cholesterol, (*id.* ¶ 17), and therefore have not alleged that the drug was ineffective for the purpose for which it was prescribed or "worth less . . . [because] the product did not perform therapeutically as expected." *Huertas*, 120 F.4th at 1176.

Because Plaintiffs have not alleged particularized facts that demonstrate a cognizable economic injury, they have failed to establish the first element of standing. The Court need not analyze the second and third elements and refrains from doing so. *See Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 138 (3d Cir. 2009) ("While all three of these elements are constitutionally mandated, the injury-in-fact element is often determinative.").

### b. Physical Injury

Plaintiffs allege that they "ingested medication manufactured by Defendant that were subject to a nationwide Class II FDA recall, based on CGMP deviations that could result in unsafe or ineffective drug products," which "placed them at an increased risk of adverse health effects,"

9

and thus have a need for a "medical monitoring" program.  (Compl. ¶¶ 130-32.)  Defendants argue that Plaintiffs' allegations "that a recalled product 'could' cause 'potential' adverse effects" are conjectural and hypothetical.  (Mot. at 29-32.)  Plaintiffs argue that the defective Pravastatin "carried the risk of causing elevated blood pressure, which is a serious health concern."  (Opp. at 15.)  The Court finds that Plaintiffs' pleading amounts to a future risk of physical injury, not a concrete, particularized injury that is actual or imminent.

To demonstrate an injury-in-fact, a plaintiff must show particularization—the injury "must affect the plaintiff in a personal and individual way," and concreteness—the injury "must be 'de facto'; that is, it must actually exist." *Spokeo, Inc.*, 578 U.S. at 339-40 (internal citations omitted). A plaintiff is also required to "show that his or her injury is 'actual or imminent, not conjectural or hypothetical.'"  *Johnson & Johnson*, 903 F.3d at 284 (quoting *Spokeo, Inc.*, 578 U.S. at 339). "That [a product] was adulterated due to a lack of compliance with [C]GMP requirements is not enough, without more, to state a[n] [injury-in-fact]."  *See, e.g.*, *Myers-Armstrong v. Actavis Totowa, LLC*, No. 08-04741, 2009 WL 1082026, at *4 (N.D. Cal. Apr. 22, 2009), *aff'd*, 382 F. App'x 545 (9th Cir. 2010).

Here, Plaintiffs do not allege that they have suffered an actual physical injury.  Plaintiffs' single reference to "[a]nxiety and emotional distress" stemming from ingesting Defendant's Pravastatin, (Compl. ¶ 53), is conclusionary.  And even assuming Plaintiffs ingested Pravastatin from a recalled lot, which is not well pled as discussed *supra*, a Class II recall yields only the possibility—not a guarantee—of "temporary or medically reversible adverse health consequences."  21 C.F.R. § 7.3(m)(2) (2026).  In fact, "the probability of serious adverse health consequences is remote."  *Id.*  In this case, Plaintiffs do not claim that they suffered *any* adverse health consequences, thus their risk of future physical injury is highly speculative.  Because

Plaintiffs have not demonstrated a cognizable physical injury, they fail to establish the first element of Article III standing. Again, this Court refrains from analyzing the second and third elements. *See Toll Bros.*, 555 F.3d at 138.

### 2. Nationwide Class

Plaintiffs' claim regarding their purchase and consumption of Pravastatin is not well pled and Plaintiffs do not plead any personal injury related to Defendant's other three cholesterol drugs: Fenofibrate, Rosuvastatin, and Colesvelam hydrocholoride. Defendant argues that Plaintiffs lack standing to represent a nationwide class for alleged injuries relating to all four of Defendant's drugs.[2] (Mot. at 17-19, 28-29.) Plaintiffs contend that such representation is permissible "so long as a class representative has standing." (Opp. at 11-12 (quoting *Neale v. Volvo Cars of N. Am., LLC*, 794 F.3d 353, 362 (3d Cir. 2015).) Plaintiffs also argue that this question is best resolved at the class certification stage of litigation. (*Id.* at 12.)

"[A] plaintiff in a class action must show that she has personally been injured; indeed, the class plaintiff cannot rely on 'injuries suffered by other, unidentified members of the class.'" *Lieberson v. Johnson & Johnson Consumer Cos., Inc.*, 865 F. Supp. 2d 529, 537 (D.N.J. 2011) (quoting *Lewis v. Casey*, 518 U.S. 343, 357 (1996)). "[T]he Supreme Court and the Third Circuit have repeatedly held that a plaintiff needs to establish standing for every claim she seeks to press." *Serrano v. Campbell Soup Co.*, 773 F. Supp. 3d 127, 149 (D.N.J. 2025) (citing *TransUnion*, 594 U.S. at 431; *Lutter v. JNESO*, 86 F.4th 111, 124 (3d Cir. 2023)). "A class action does not change that standing requirement." *Id.* (citing *Lewis*, 518 U.S. at 357; *In re Horizon Healthcare Servs.*

---

[2] Defendant also argues that Plaintiffs do not have standing to assert fraud claims under New Jersey law. (Mot. at 19-26.) Because the Court finds that Plaintiffs failed to establish standing as to themselves and therefore the purported class under the injury-in-fact element, the Court does not reach Defendant's claim-specific standing arguments.

*Inc. Data Breach Litig.*, 846 F.3d 625, 634 (3d Cir. 2017)).

Here, Plaintiffs do not establish standing themselves with respect to any claim to represent similarly situated unnamed class members—let alone those residing in states other than Georgia or Ohio and those who purchased and consumed Fenofibrate, Rosuvastatin, or Colesvelam hydrocholoride from Defendant's recalled lots. Moreover, "this Court will not wait to resolve standing until class certification. Why should defendants—and an overburdened Court—be dragged into protracted nationwide discovery for a class certification that may never come?" *Serrano*, 773 F. Supp. 3d at 150.

Because Plaintiffs fail to establish standing for their personal alleged injuries and for the alleged injuries of unnamed class members, the Court lacks the authority over this Complaint as pled and thus will not consider the merits of Plaintiffs' claims. *See Adam v. Barone*, 41 F.4th 230, 233 (3d Cir. 2022) ("[I]f a plaintiff does not have standing, courts 'lack authority under Article III of the Constitution to consider the merits' of any claim." (quoting *In re Boy Scouts of Am.*, 35 F.4th 149, 156 (3d Cir. 2022))).

## IV.    CONCLUSION

For the reasons set forth above, Defendant's Motion to Dismiss (ECF 7) is **GRANTED**. Plaintiffs' Complaint is **DISMISSED** without prejudice in its entirety. Plaintiffs may file an amended complaint within thirty (30) days of this Opinion that presents grounds for proper subject matter jurisdiction. An appropriate order follows.

/s/ Jamel K. Semper
**HON. JAMEL K. SEMPER**
**United States District Judge**

Orig:  Clerk
cc:    James B. Clark, U.S.M.J.
       Parties

12